Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion Issued June 29,
2006

 

 

 

 














 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00120-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



KRISTAL STEADMAN, Appellant

 

V.

 

TEXAS DEPARTMENT OF FAMILY & PROTECTIVE SERVICES,
Appellee

 

 

 



On Appeal from the 131st District Court

Harris County, Texas

Trial Court Cause No. 2004-03444J








 

 

 

 



MEMORANDUM OPINION

          Kristal
Steadman appeals from the trial court’s order terminating her parental rights
to J.A.F., her minor child.  Steadman’s
counsel has submitted a brief stating that, in his professional opinion, no
arguable grounds for appeal exist.  See
Anders v. California, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400
(1967); In the Interest of L.D.T., 161 S.W.3d 728, 730 (Tex.
App.—Beaumont 2005, no pet.) (collecting Texas appellate cases applying Anders
to termination of parental rights cases); see also In re D.E.S., 135
S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2004, no pet.); In re K.D.,
127 S.W.3d 66, 67 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  Counsel served Steadman with a copy of his Anders
brief and moved to withdraw as counsel. 
In his motion to withdraw, counsel represents that he advised Steadman
of her right to a copy of the appellate record and transcript, and of her right
to file a pro se brief with the court.  Steadman
did not file a pro se brief.  The State
waived the filing of an appellee’s brief. 
We have independently reviewed the record on appeal and we affirm.

Background

          Steadman gave birth to J.A.F. in October 2003.  In April 2004, the State petitioned in family
court for the temporary emergency conservatorship of J.A.F. and for termination
of Steadman’s parental rights.[1] 
The trial court conducted a bench trial in December 2004, with Steadman present
and represented by counsel.

          Rochelle
Harris, the C.P.S. caseworker for J.A.F., testified that in March and early
April 2004, C.P.S. had received four referrals implicating Steadman, one for
alleged emotional abuse, one for alleged physical neglect and emotional abuse,
and two for alleged neglectful supervision. 
Steadman, age eighteen, was then residing at a shelter in Harris County.  She had previously lived in a couple of other
shelters.  Steadman told Harris that a doctor
had diagnosed her with depression, but she did not take her prescribed
medication.  Steadman admitted to Harris
that she used marihuana when she lived on the streets, but not while residing
in the shelter.    

          Harris
created a service plan for Steadman that included counseling, a psychological
assessment, a drug and alcohol assessment, and parenting classes.   Steadman did not participate in these plans
at that time, and she refused to submit to drug testing.  She completed a parenting class in Fort
Worth, approximately three weeks before trial.

 
        Steadman gave birth to a
second child in early December.  After a
July court hearing, Steadman moved to the Dallas/Fort Worth area.  The record reveals that Steadman visited
J.A.F. one time, immediately after the July hearing.  Steadman testified that she attempted to
telephone J.A.F. on several occasions, when a calling card was available to her,
but had difficulty reaching her foster parents. 
Steadman did not inform Harris that she had moved away from Harris
County until November 22, the day Steadman missed a court hearing in this case.  At that time, Harris sent her information
about resources in Fort Worth regarding counseling and the necessary drug and
psychological evaluations.  In addition,
Harris arranged for a background check with regard to J.A.F.’s father’s mother,
Mary, with whom Steadman represented she then resided.[2]  The check revealed
that the State had removed a child from Mary due to endangerment.[3] 


          Steadman
testified that she moved to a shelter in Denton, Texas at age seventeen because
she was pregnant, the father of the child was in jail, and Steadman’s own
father was abusive.  She did not complete
her education beyond the eighth grade.  Steadman
admitted that, at the time the State removed J.A.F., she did not have a stable
place to live, had no job, had been diagnosed with depression, did not take
prescribed medication for it, and agreed that it was fair to say that she was
not capable of taking care of the child. 
She has had suicidal thoughts, but not since the birth of J.A.F.  Though someone in the shelter accused her of
hitting J.A.F., Steadman denied it, saying instead that J.A.F. was crying
unattended in her crib.  

          At
the time of trial, Steadman was unemployed, and she resided with Helen, the
paternal grandmother of her second child, who has a different father from J.A.F.  The second child currently was hospitalized.  Steadman was unsure where she planned to live
after the trial, but hoped that she and J.A.F. could reside with J.A.F.’s
father’s aunt, with whom she had lived earlier in the month.  She admitted that she had made no living
arrangements for the care of J.A.F., should the child be returned to her care,
and at the time of trial, had no means of support.  She indicated that she might turn the care of
J.A.F. over to J.A.F.’s father’s aunt.  The
aunt testified that she was willing to provide J.A.F., J.A.F.’s father, and
Steadman a place to live, though Steadman had also lived with Helen during the
last month.[4] 


          Another
caseworker, Theresa Megwa, testified that J.A.F. was doing very well in the
foster home in which the State had placed her in April 2004.  She stated that termination was in J.A.F.’s
best interests.

          Following
the December trial, in January 2005, the trial court ordered that Steadman’s
parental rights be terminated.  In the
order, the trial court found that (1) it had jurisdiction over the parties and
the case; (2) the parties waived a jury trial; (3) the State established by
clear and convincing evidence that Steadman had engaged in conduct or knowingly
placed the child with persons engaged in conduct that endangered the physical
or emotional well-being of the child and had constructively abandoned the child,
while J.A.F. was in the temporary conservatorship of the State, for more than
six months, after the State made reasonable efforts to return the child, by
failing to maintain significant contact with the child and by demonstrating an
inability to provide the child with a safe environment; and (4) that State
conservatorship was in the best interests of the child.

          Steadman’s
trial attorney filed a request for additional findings of fact and conclusions
of law, and a statement of appellate issues, raising legal and factual sufficiency
points with respect to the trial court’s order. 
Steadman filed a pro se notice of appeal, and the trial court appointed
counsel for the appeal.

Anders Procedure

          Steadman’s court-appointed counsel
states that, in his professional opinion, no arguable ground for reversal of
the trial court’s judgment exists and thus the appeal lacks merit.  See Anders, 368 U.S. at 744, 87
S. Ct. at 1400.  Counsel’s brief meets Anders’s
minimum requirements by presenting a professional evaluation of the record and
representing that no arguable grounds for appeal exist.  See Gainous v. State, 436 S.W.2d 137,
138 (Tex. Crim. App. 1969).  Steadman’s
counsel sent a copy of the Anders brief to Steadman and has moved to
withdraw as counsel.  Counsel advised
Steadman of her right to the appellate record and her right to file a pro se
brief.

          In
a case in which court-appointed counsel asserts that no arguable ground for
appeal exists, we independently conduct a review of the entire record.  Anders, 368 U.S. at 744, 87 S. Ct. at
1400 (emphasizing that reviewing court—not counsel—determines, after full
examination of proceedings, whether appeal is “wholly frivolous”); see In re
D.A.S., 973 S.W.2d 296, 297 (Tex. 1998). 
In reviewing the record, we are mindful that termination of a parent’s
parental rights involves fundamental constitutional rights and that the State
must meet its burden of proof by clear and convincing evidence.  See Santosky v. Kramer, 455 U.S. 745,
758–59, 102 S. Ct. 1388, 1397 (1982); In re J.F.C., 96 S.W.3d 256, 273
(Tex. 2002).   If we determine that arguable grounds for
appeal exist, we abate the appeal and remand the case to the trial court to
allow the court-appointed attorney to withdraw. 
See Bledsoe v. State, 178 S.W.3d 824, 827 (Tex. Crim. App.
2005).  The trial court must then either
appoint another attorney to present all arguable grounds for appeal to the
appellate court or, if the party chooses, allow the party to proceed pro
se.  See id.  If, on the other hand, we determine from our
review that the appeal is frivolous, we may affirm the trial court’s
judgment.  The holding that no arguable
ground for appeal exists is subject to further appellate review in the Texas
Supreme Court.  Cf. Bledsoe, 178
S.W.3d at 827 & n.6.

          In
accordance with Anders, we have reviewed counsel’s brief and the trial
court record.  We conclude that no
arguable ground for appeal exists and therefore affirm the judgment of the
trial court.  We grant counsel’s motion
to withdraw.[5]

 

 

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Keyes,
Alcala, and Bland.

 











[1] The State also moved to terminate the parental rights
of J.A.F.’s father.  The father does not
appeal the trial court’s order of termination of his rights.

 

 





[2] J.A.F.’s father testified that he and Steadman moved
in with his mother on November 12.

 





[3] J.A.F.’s father was the child that the State had removed
from Mary’s home.  He testified that the
State removed him because his father had abused him, and his mother was not in
a position to protect him from his father, so his aunt raised him.





[4] J.A.F.’s father had been released from prison, having
been convicted of felony burglary, on November 12.

 

 





[5] In connection with withdrawing from the case, counsel
has a duty to inform Steadman of the result of this appeal and that she may, on
her own, pursue review in the Texas Supreme Court.  See Bledsoe v. State, 178 S.W.3d 824,
827 & n.6 (Tex. Crim. App. 2005).